Lawson. Is that how you say it? Lawson, yes. Good morning, judges. At the outset, I feel like I owe the court an apology for citing more than 100 statutory provisions in our brief. That breath was not an effect to overwhelm the court. It reflects how Louisiana regulates health care delivery and insurance as an integrated statutory scheme. Those provisions operate like components of a single machine. You remove one cog and the system does not simply adjust. It begins to strain, misalign, and ultimately fail to function as designed. The issues here cannot be resolved by isolating a single phrase from a single subsection of a single statute without unsettling that entire larger structure. Now, this court returns on remand after the court reversed Ameritas' first dismissal. What was sent back to the district court was a live controversy. Whether Ameritas may apply discounted rates to dental provider claims while avoiding the disclosure and reimbursement obligations Louisiana law imposes at the time of service and payment. In Wightman 1, this court addressed prescription for statutory and contractual claims arising from direct and indirect contracts, not the scope of the Louisiana Supreme Court clarified the applicable prescriptive period and identified factual predicates relevant to the application of the PPO Act. In doing so, it expressly acknowledged that multiple statutory and civil code provisions could govern the party's conduct and claims at issue. Remand therefore permitted application of those clarified principles to the developed record. It did not narrow the potentially applicable law or authorize extinguishing reinstated claims at the threshold. Yet, over the course of seven years, those questions have never been answered. Instead, the district court narrowed the case out of existence. It reversed its prior holding that dentists or providers under the PPO Act concluded that the 2021 Network Leasing Act leads to the presumption that the 1984 PPO Act never applied to dental providers at all and invoked judicial estoppel and abandonment to avoid examining the record and denied amendment as futile. The result was not a merits determination. It was a retroactive constriction of a 1984 statute based on a 2021 enactment. This appeal therefore presents three issues. Whether the PPO Act applies to dental providers, whether Emeritus qualifies as a group purchaser under both Williams v. Bestomp and the Act's Deamer provision, and whether the mandate permitted avoidance of merits adjudication through procedural doctrines. The court's statutory errors drove its procedural errors. The provider's statutory argument is textual. The PPO Act was enacted in 1984 as a Title 40 public health statute regulating preferred provider arrangements at the point of service and reimbursement. It defines preferred provider organization, provider, and group purchaser in functional terms. A provider includes anyone whose services are covered under a policy, whether that policy is health, dental, or combined. The Act contains no specialty limitation and no exclusion for dentists. It also includes an anti-discrimination clause which prohibits the exclusion of qualified I would have you remand the matter for consideration of the actual statutes at play here and in the context of all of the claims that were pled, preserved, and argued on summary judgment pursuant to Rule 15b, which is the universe of Louisiana's health care regulatory statute. Those hundreds of laws that we discussed, which relate to licensing of insurers and providers, contracting, claims adjudication, prompt pay, reimbursement, balanced billing, insured member protections, unfair trade practices, misrepresentation. Are you asking us to make a finding that dentists are covered under the PPO? Yes. I don't want to oversimplify, I mean that's what we need to do in order to get to these other things, isn't that correct? That is what we need to do. So you need to tell me why dentists are covered under the PPO. Because the PPO Act defines a provider specifically as every health care entity and as any health care entity specifically covered by a policy, whether it's health, dental, or combined benefit. The reason it did that is because if it identified every provider type, this statute would be hundreds of pages long. Phlebotomist, lab specialist, x-ray tech. Okay, assuming arguendo that we weren't sure whether dentists are covered under the PPO and we've been informed by the board of insurance or something in the amicus brief that says that we would be doing damage if we were to decide this in a way that's, this is a fairly friendly question, should we certify this question? I know this case has been going on a long time and we've already had this, but would this be something that we should be certifying? That's a very good question, Judge Elrod, and that is one I battled with myself. I did consider asking the court to certify that question, but at the end of the day, when the text of this statute contains no express exclusion, a very express inclusion of anyone covered under a policy, which has never been disputed in this case, these providers were covered, the claims were covered, and they were paid, and the statute expressly contains an anti-discrimination clause that says you cannot exclude any provider for any reason, I don't know that the Supreme Court needs to come in and say, oh yeah. Well, can we consider the NLA's text, though, as part of our analysis? Of course. In the last case, the text says exclude services stimulated by a provider that can bill this medical expenses, and when it's talking about dental services. So what do we do with that? Well, okay, so what that means is, again, we've got different kinds of policies, right? A medical policy, a health policy, and a dental policy. Now, Louisiana law specifically mandates that every policy, whether it's health or dental, includes coverage for certain dental conditions. We discuss that in our briefs. It's cleft palate, it's certain surgical procedures, orthodontics, and prosthetics related to those mandatory conditions. And so in that context, whether the service is provided by a licensed medical doctor, or in this case, a licensed dental surgeon, it's covered, right? But because the NLA pertains only to dental policies and dental network contracts, it, of course, carves out whether the provider is a medical doctor. So carving out in certain circumstances doesn't mean that the overall act doesn't apply. That is correct. What do we do, though, about the group purchaser issue? Can you explain how Emeritus became a group purchaser, even though you never contracted with it? Yes. That is addressed in the Williams v. Beskamp case. Because the PPO Act expressly applies to any provider covered under a policy, the remand record itself resolves that group purchaser issue as a matter of law. In Williams, the Louisiana Supreme Court made clear that group purchaser status turns on function, not characterization of the contracts. Now, characterizations of the contract in the very first Whiteman 1 proceedings, meaning however the parties described them, is what their functional role was. That's not what the Louisiana Supreme Court said. Can you cite any, I'm sorry, what did they say? They said the issue turns specifically on who issues the benefit cards, who applied the discounted rate, who controlled claims adjudication and payment, and who bore the statutory obligation for proper claims adjudication and prompt payment. And Emeritus did all that? Emeritus did all of that in this case. Can you cite any other case where a third party like Emeritus incurred liability under the PPO Act through signing an agreement not directly with the provider? Sure. There are several cases out of Louisiana, but probably the most important one would be the Gunderson cases, and there's varieties of those, so we'll have to send you submissions. Did you cite Gunderson? They are cited in the brief. Gunderson was a plaintiff, and they brought multiple suits against different carriers, and so I'll have to get you the actual titles of the, the correct titles of the suits so that you can find those more readily. But yes, there are instances where third-party indirectly contracted entities are liable. And in fact, in both Williams and in the Whiteman matter that was on certification, discussed the applicability of the PPO Act to third-party contracts and indirect claims in the context of the civil code obligations for contracts. Well, if you're going to give us any more authorities, you need to do those in five business days, and the opposing counsel, your friend on the other side, would have five days after that business days to submit any other authorities to the contrary, to give each side a chance on that. Yes, Your Honor. Thank you for the opportunity. Not any arguments, only the cases, the citations. Thank you. Thank you for the opportunity, Judge. Now, as I said, under the Williams functional test, Emeritus fits squarely within the statutory definition. It delivered the network product. It contracted for the benefit of its insureds. It invoked the discount, and it controlled payment. But even if those requisite elements were met, the Deamer provision also triggers PPO Act applicability. The Deamer provision is codified at Louisiana Revised Statute 40-2203.1b, and that provides that, as here, when the benefit card fails to identify the discount entity, the insurer identified on the card is deemed the group purchaser. The entire purpose of that rule is to prevent what is happening here, which is undisclosed discounting through silent leasing structures. Would any of your previously pleaded claims be before the district court if you were sitting arguendo to lose your PPO claim, Act claim, and if we found unjust enrichment and breach of contract were forfeited? Do you have anything left? We do, because the entire premise of the claims, the entire world of claims that the providers asserted, were undisclosed network leasing, improper discounting, claims manipulation, misrepresentation, and breach of statutory and contractual duties. Those were pled in the original case. Those came up before this court in the first appeal, and they were remanded back down, and they were remanded back down because the prescription issue was the sole determinative issue on all issues addressed in that first appeal, and that is when you reversed for prescription on the contract claims, all of the other claims are automatically revived because they were all dismissed on the basis of prescription contemporaneously with the main one, and so yes, we have the world of claims. Now, Emeritus is arguing that all of the claims that we've asserted, specifically in the briefs, downcoding, cherry picking, claims manipulation, fraud, all of those types of things they've argued are irrelevant because they do not speak directly to the PPO Act itself, but they've never denied the conduct. They've never denied that they did not pay contractual claims. They've never denied that they underpaid them. They never denied that they cherry picked, bundled, and downcoded in violation of very specific Louisiana statutes that are cited in the briefs, and they've never said that what they did is wrong, and so what they've said is the court can't consider any of that, and it doesn't matter because we're only here under the PPO Act. That is simply not our position at all, and the Williams Court addresses that when they say specifically that the world of claims, the universe of claims, includes statutory duties and direct contractual duties arising from these indirect agreements. In other words, while Emeritus would have you believe that they cannot have violated the PPO Act as a matter of law because the dentist is not a provider, they would also have you accept then that there is no other statutory framework that controls their conduct and their duties and obligations, and that's simply not true. There are dozens and dozens of statutes that control payment obligations, claims processing, and adjudication, and beyond that, there are more statutes that layer in consumer protections for the insured patients because under Louisiana law, a provider is not allowed to go, and it's called balance billing, they can't go and balance bill a patient for whatever the insurance doesn't pay when the insurance improperly discounts the claim. Was all this raised before the district court? Yes, the district court rejected all of those arguments as novel and inconsistent with our prior positions, or as waived and abandoned in the first degree. Did they address them, or are you interpreting something as having that effect? He did not address them at all, but the court said, so let me back up, when we went on remand, I specifically asked to amend the petition in light of the intervening cases out of the Louisiana Supreme Court. The judge denied that request. We filed multiple, you know, joint status report addressing the issues before the court, and oppositions to summary judgment briefing, all kinds of pleadings before the court raising these issues, and the court said, I'm not allowing amendment. Well, then the court said, I will consider your amendment in the context of the summary judgment briefing. So we've, again, re-briefed all of it on summary judgment, and under Rule 15b, we believe that those issues are then tried by consent of the parties. Emeritus had the opportunity to respond. So if we do as you ask, what precisely do you think the district court must do? In our view, the district court has to look at the actual contracts, which it still has not done. It has to look at the actual licensing of the entities, which is Emeritus, Dentamax, and the which it has not done. It needs to determine what statutes actually control the licensing and contracting at play, and then it can determine, not only under the PPO Act, but under Louisiana's broader regulatory framework, where the conduct fits in and what laws it violates, which is the downcoding, the claims manipulation, the cherry picking, all of those things. So does that include consideration of issues that there are, that the judge said are foreclosed based on our prior decision in this case? Yes. The judge essentially said all of the factual issues had been decided in the context of the appeal and could not be considered on remand. And so it foreclosed consideration of the actual written contracts themselves. It foreclosed consideration of the licenses, and it foreclosed consideration of any non-PPO Act claim. In other words, the undisclosed discounting, the misrepresentations, the claims manipulation, it said all of that is outside the context of the PPO Act claim itself, and we're not considering it because it's either abandoned, a novel argument, or an inconsistent position taken on remand. Okay, thank you. We have your argument. You've saved time for rebuttal. Thank you. Mr. Fagan. Thank you. Good morning, Your Honors. I'm going to go in reverse order with Judge Braves' last question because I think setting the stage accurately is important here. And the accurate stage is that when this case went up on Whiteman 1, which was the statute of limitations, the prescription issue, the only thing that was decided, and this is the important part, the only thing that was appealed by the plaintiffs was the dismissal of the claims for the, based on the penalty clause, Section G of 40 colon 2203.1, which is the... So that they had an opportunity to appeal all the other things and just did not and only appealed the one thing? Is that your position? It's very specific. It's the October 2024 order, and that is the one that's referenced. I looked at the notice of appeal yesterday. That's what's referenced in it. It wasn't, you don't see the catch-all and everything else in all other adverse rulings. It was that ruling. And if memory serves, I believe that Judge came back, or in the first one, I don't remember, referral or when it came back, that there had been no appeal. The only appeal that was before, the only certified question before Louisiana Supreme Court was really the only issue that had been appealed. The other arguments that came up were alternative basis to appeal that Emeritus raised, not any separate appeals that the court had. Because what had happened before, Judge Graves, is the breach of contract claims were dismissed, the unjust enrichment claims were dismissed, and I think there was one other that was dismissed. Those were not appealed. That's what Judge Barbier specifically noted on remand. And again, as I recall, Judge Graves, I think your decision referenced the appeal of the issues before the court as the ones having to do with the statute of limitations based on the penalty claims. So that did not revive any of these other claims? I don't. That is our position, that they had the opportunity to appeal those. They were in the form of a final judgment. They chose only to appeal the issues on the statute of limitations, and they lost their chance to do that. So if there is a remand in this case, which we would hopefully not see down the line, but if there is a remand of this case, it would be restricted to the issues on the PPO Act. Now, the second part of maybe I'm anticipating your question. I hope you are, because I got another one, so go ahead. All right. Well, I think the other one, all these other claims that Counsel for Plaintiffs has referenced were ones that were raised in the form of a — first, it was in a joint status report. They wanted to — Judge Barbier had asked for a joint status report. And then it was a hundred-plus-page status report that sought to raise every other statute that has anything to do with any kind of insurance or benefit plan in the State of Louisiana, virtually. I mean, there's a — I think it's 127 statutes that were cited, ultimately. But that's what they tried to do, Judge Grayson and the Court, is the plaintiffs wanted leave to amend to add all these other claims in addition to the PP — what I'm calling the penalty claims. Did I forecast your question, or do you still have another one? I'm not sure, because I guess my concern is whether or not the district courts seem to be making a determination about what claims could be raised on remand based on what the district court says we decided on appeal. In other words, it said we foreclosed the opportunity to raise those claims on appeal. I think — And I'm not sure that's what we did. Well, your footnote in the decision that you authored specifically references — we recognize that — I'm paraphrasing — we recognize that the parties have raised other issues, but we're not deciding them right now. If you look at those issues — Okay. So we're not deciding them. So how does the district court then get to decide that we decided them? The district court decided that because they didn't appeal — because the plaintiffs didn't appeal certain issues in the first round, in Whiteman I, that those — those are forestalled. That's — that's a separate and distinct issue from the — what the motion for leave that the plaintiffs tried to file. So the basis is not the district court making some determination that on appeal, we ruled on those issues already. He did both, okay? Judge Barbier decided that any breach of contract on Justin Richman — I think there was a third one — that were not appealed in Whiteman I, that that was foreclosed. He also denied the motion for leave to amend the complaint to add these plethora of other claims based on other statutes. The problem — unless you have any more questions about that, Judge. No. Go ahead. The problem with the plaintiff — the plaintiff's overall argument is the focus, because this is not about the comprehensive Louisiana insurance scheme, which has — I don't know if Texas writes more statutes than Louisiana. Maybe not. But we write a lot. Our legislature likes to do that. About cars, they do. So there's plenty of statutes out there. But there's only one set of statutes that are related to this claim. Just one. And it's the PPO Act, and it's more specifically the penalty claims, because that is what the plaintiffs center their claims on, because the PPO Act, 2203.1, has two components, basically. There are two things you're supposed to — there are two potential consequences if you don't abide by the statute. One, you — if you don't have the benefit cards or give some other notice to the participants, that is, if the payor doesn't, if the benefit card or if there's not some other notice. And there actually was other requirements for notice in this case, because the contract between Dentamax and Emeritus, which is in the record, says that within 30 days of somebody else becoming a payor, Emeritus, Dentamax was supposed to notify the providers, not participants, the providers. And so there is that affirmative. Now, we never got down the road whether that happened or not. So this — the threshold of this case is the penalty claims. That's what the driving force of this claim. That's where the standing — what I call as the standing issue is the dental issue. And the context of the PPO Act, it is — it is written in a blank slate in the sense that when the legislature initially enacted this in 1984, it did not include a penalty claims provision. It did not. That came in 1999, 14 years — or 15 years later. That was a new, separate statute that — that was enacted, that — that was really the only thing that was enacted by the amendment that — that did that. It made some slight changes, interestingly, at the same act in 1999, the legislature did, to the definition of providers. Dentists were not added. Midwifery was. Dentists were not in 1999. The definition of providers under the PPO Act — and that's the one that matters here — has never included anything that could be remotely characterized as a dentist or the practice of dentistry or dental services. It is always cast — But — but for you to reach that conclusion, we have to be agreeing that dental care is not health care. I was going to — that was my next point. All right. Well, convince me. Health care services are used in the PPO Act. But the only health care — that's one phrase that's used. But what you see more frequently throughout the statute, and solitarily, actually, when there's a predicate on it, is medical something, medical services, medical expenses, medical this. It's always medical. And what's most important is that Section G of the penalty statute, of 2203.1, only references medical services. So, Your Honor, respectfully, the question is not so much whether or not it's health care services, because the penalty statute is very specific that it has to be medical services. Why are there medical services? Pardon? Why is the dentist providing medical services? Because the practice of dentistry is not the same as the practice of medicine. Louisiana regulates — Well, that begs the question. Why? Why? Pardon me? Your response is because dentistry is not. But why isn't that the practice of medicine? I think it can be characterized as a health care service. A health care service. That's what I mean. Practice dentistry is health care. It is one — medical — medicine, dental practice is one part of health care, of health care. I don't understand that, but I don't — I guess I'm saying I don't see much light between those two. The Louisiana legislature makes distinctions, and they are not consistent. They make a lot of distinctions, and I don't see the light of them. They're not consistent? Is that what you just said? Pardon me? You just said they're not consistent? Louisiana statutes, if you look outside of the scope of the PPO Act, they have differing definitions of what is medical services and whether it does or does not include dental services. There are some that do not include it. There are some that only include it for the — Well, given that they have these broad lists, and then they're not consistent in the law, wouldn't — shouldn't we be really abundantly careful before we say, no, it's not included in the statute, and at the very least, go to the Louisiana Supreme Court again and to see about this? I think that the Louisiana Supreme — if you did that, I think the Louisiana Supreme Court would apply the same precepts that it did the first time around, which are that this is a penal statute. It must be narrowly and strictly construed, number one. Number two, Louisiana's fundamental rights are the freedom of contract. That's one of the basic rights under Louisiana law. The PPO Act, when it was incepted in 1984, impinged upon and impaired those rights because it restricted the rights of people, of payors to contract with people who gave third-party access. That is — those are two reasons. So the plaintiff's brief goes a long way about — and repeatedly says this is a remedial statute. It must be liberally construed. That is the polar opposite of what, time after time again, the Louisiana Supreme Court and what it did in Williams — Are you saying we shouldn't do that? I'm saying if you follow the statutory requirements — yes, I am saying you shouldn't do that because I think the statutory requirements are clear. What do we do with the amicus brief from the Louisiana Department of Insurance? There is no Chevron deference. It never has been in Louisiana. It's a question of law. It's up to this Court. I mean, but doesn't that vote put a thumb on the scale that we should at least go to the certified question? If they were interpret — the Louisiana law — and we do have a case that's in one of the footnotes, case or two in one of the footnotes. Louisiana law, when the Louisiana Department of Insurance chooses a brief, whether in the form of an amicus brief or otherwise, is they — if they're talking about their regulations that they wrote, those are things that they can speak on and you may give some deference to them. Well, I'm not saying that they're right. I'm saying that at least if learned people are not in agreement, we shouldn't wade into Louisiana law. We shouldn't make an easy and eerie guess in something so important. Although, you know, I understand this has been going on a long time. We've already done this. I understand all those arguments. But if you say that we're going to make a definitive statement about this really important statute and there are people within that, you know, that deal with this that think differently, that's a — that causes pause, doesn't it? I know that certified questions, when there are no clear answers from the Supreme Court, are within the Court's prerogative to certify, if it feels necessary. So certainly, it is within your prerogative to certify. I just think that the — if you apply the statutory maxims here, when you're — Can you win on this root purchaser argument so it doesn't matter? Yeah. Can you tell us that? Essentially. But no, it's — there's a little nuance to it. Because — so as a matter of backdrop, for good or for bad, I've been in the PPO litigation since around 2006. Williams' case lasted not — it's longer than this case, Williams v. Beskamp. I represented what AIG Charters in that — what spanned 10 years of litigation until the Supreme Court. So I've got a good handle on the background of this. And I argued the Williams v. Beskamp case. Well, that's good. We've got you here, then. Yeah. Can you win on that so that we don't have to decide this? Or are you going to tell me that even if you won on that, we still have to decide this? The nuance from the Williams case is that what we would win on if we're not a root purchaser — and we are not, because the Williams court made it crystal clear that anyone who has access to a PPO, which is what Emeritus said, they did not have a contract with their provider and they did not form or establish the PPO that DentiMax established because we didn't even have a contract with DentiMax until three years after they had contracts with the Whiteman's. And so the penalty, what — if you agree on that point, that they're not a group purchaser, then the penalty is gone. The Section G claim is dismissed, which — But it doesn't get rid of the whole thing. You're right. So we have to decide the PPO thing. You have to — Or else we have to ask the Louisiana Supreme Court to decide. That's correct. The thing that could remain, and this is — I appreciate your candor. Yeah. The thing that would remain is what the court says, that we still have the duty to pay the claim, even if we — It's just whether you won't give a penalty. You'll just be paying it on its face. That's right. That's correct. So it doesn't disappear because if we have the group provider statute based on what the — So you grant the — you grant the summer judgment on the PPO claim. You reverse the dismissal of the unjust enrichment claim. The other PPO claims, the — you will not get a penalty. I think I — I'm sorry. I didn't catch all of that. That's — I'm — I think I have pretty good hearing. What do you think should happen? Oh, I'm sorry. Is that — There you go. What should happen is this Court should affirm. This Court should find that because there is no reference in the PPO Act, everything in the definitions — and if you look at the statute from the very beginning, I really invite you to look at the act-by-act as it — because it wasn't just one. And from the get-go, medical services were always in the PPO Act. Nothing — So affirm across the board. Affirm — well, the only thing you need to affirm is that they're dental providers. And you affirm that. And you affirm the district court's determination and find that there was no basis to grant leave on tail-end claims that were not part of the original claims. So we hold that that's dental, and the dental is not covered by the PPO — the act. Right. And then we would say that you can't bring any new claims because they're futile, and the district court was correct on that and didn't abuse its discretion. Or just had the right not to have a whole panoply of new claims brought forth for — It's too late. Yeah. Or it was not formally appealed, so it was forfeited or something. Yeah. Okay. Is that it? No, there's — I know you're asking me, is there an alternative? Is that the question, perhaps? You're asking me, is there an alternative? Yes. You can certify, get it to the Supreme Court, and then we wait another 5 months to 12 months, and then we come back here again, and that's possible. Another alternative is you say, okay, we don't need — you can decide that they're not, that dentists are — provide medical services, and I don't think that's correct. Because when you strictly and narrowly construe the statute and look at the freedom of contract and how it's been impaired. And then you decide we're a group purchaser — not a group purchaser, excuse me, but we might still have this remedy for the difference between the amount that was paid and the amount that whatever their — Was submitted on the claim. Whatever their fee schedule was. Yeah. That would be the, I guess — So we would remand for that to be entered. You would remand for that. They would get that amount of money, the difference between the fee schedule and what was paid. Which is very considerable, because the penalty statute, all you need to do is look at the Williams case. I mean, the Williams case, it was $22 million for a thousand — or 90,000, some of them even a penny. It doesn't matter the amount that — But that would be the only thing would go back to the actual amount, and it might be $10. We don't know what it is. It might be $10. It might be a penny. It might be $25. It might be something like that. But that would be the only thing remanded under your theory? Under one of my theories, yes. One of your — if you lose on the argument that it's not covered.  That's the alternative. If I lose on something issue, that would be what — Did that answer your question, or do you have a — Okay. Questions, Bill? Yeah. I confess that Judge Tate spent many years trying to make me understand the codes of the common law lawyer, and this is hard. I still struggle with it. It's just a big echo, Your Honor. That's the main thing. I'm sorry. That's okay. I got you. I'm not — Sorry. I think the other thing I would bring your attention to in terms of going to the standing issue is, and Counselor Plaintiff cites this in their brief, but look at the statute 22-1154. When it was enacted, it was enacted in 1985, 1985 Act 441. It has a definition for dental care services, and that's the Dental Service Contractors Act, which Counselor Plaintiff mentioned. It doesn't say anything about medicine. It's dentists. And so there's many different reasons why — I see my time's up — there's many different reasons why medicine, medical services are not dental services. Thank you, Your Honor. Thank you. We have your argument. Ms. Lawston? Yes. Thank you. Judge Higginbotham, I certainly understand what you mean about the civil code. I am a common law trained lawyer. I was licensed out of Arkansas, practiced there before moving to Louisiana. But I can tell you that the distinctions aren't as big as they sometimes seem when people talk about the civil code and common law. For instance, dental care is considered routine and ordinary health care in a wide variety of contexts. And we talked about this. Family law, in the sport context, dental care is ordinary medical expenses. When you consider penal incarceration, the state mandates that prisoners be provided with dental care as ordinary medical and health care. Even the statutes pertaining to judicial compensation in Louisiana provide for ordinary medical and dental health care services and expenses. Now, why does all of this matter in the greater context of this case? It matters because in Louisiana, a PPO is a legislatively defined delivery model. We didn't really talk about that today, but it's very important because it's something that the district court did not address when discussing the distinction between Dentamax, which is a licensed discount medical plan, a provider network, a telephone directory, if you will, and Emeritas, which is the licensed insurance company. In Louisiana, a PPO only exists if certain elements are met, which are contracted providers, tangible provider benefits, discounted rates, and network access. Then and only then is a PPO formed and created to allow the accessing entity, like Emeritas, to offer a benefit for its members, the insured patients, at an added discounted rate. Without application of the PPO Act in this case to dental providers, the fundamental structure of health care delivery in Louisiana starts to fall apart. And this is why. If the PPO Act never applied to dental providers and their services, and no other statute in Louisiana authorizes a PPO structure, then what is marketed, sold, and administered by Emeritas and every other insurer in Louisiana is unauthorized and illegal as a matter of law. The choice is binary. Either the PPO Act governs or the product cannot lawfully function as a PPO. And that determination bears directly on the provider's request for injunctive relief below, which was denied. We sought an injunction against ongoing discounting reimbursement practices and continued PPO operations absent statutory compliance. If the PPO Act applies, the prospective relief remains available to enforce compliance and disclosure on the benefit card. If you were to lose on your group purchaser point, is there a difference, and what is that difference, between what was paid on the claim and what should have been paid on the claim in the record? That is not in the record because it's not something the district court ever took up and considered. Right, but you would have had to have that in your complaint or something. We don't have the actual dollar amount in the complaint. Did you actually urge that? We have urged it. That was part of the unjust enrichment claim that at the very least, if every other statutory avenue under a breach of contract claim for violation of a statutory or contractual duty is denied. Every single one of those are denied. If all of these lose, if you're not a group purchaser and there's no big penalties available, then what happens? We pled unjust enrichment and we pled the applicability of Louisiana's broader health care regulatory framework. But were they there? Did the district court believe those were live when it went back? No. Well, it sounded like they were kind of spotting you that you might be able to be entitled to that under just generally on the claim itself for contract. The Louisiana Supreme Court agrees with that analysis. When it came on certification, it said... But you don't know what that amount is and it's not in the record? I don't have the actual dollar amount. We're talking about hundreds and hundreds of claims. We didn't do much discovery in this case. The court foresaw discovery for all of the multiple, multiple, multiple... Do you agree we would send it back for just the payment of the difference in the claims if you were to lose on these things? No. I would agree that it would need to be sent back for a review of the contracts, a review of statutory obligations under Louisiana health care law generally... No, you're done. You're done with all the things that didn't get pled. You're done with all the things that were forfeited. So the only thing left is what you would do under the contract for the claims? Yes. Then we should go back on that, right? If the court agrees that all other claims were abandoned, then yes. Or else they weren't pled to begin with? We believe that they were pled. I mean, misrepresentation and misappropriation and mishandling of the claims, no matter what statute applies... I'm not trying to get you to forfeit your argument here today on any of the things you bargained on this appeal. I'm just trying to figure out, as a matter of keeping up with this case that's gone on for some length of time and has all these moving parts, what would be left if we did X, what result? So we would send it back, but you don't know at this time what that amount is. I don't have the dollar amount. I don't know that we could even get the court a dollar amount because the parties are in dispute over the number of claims that are even at play. So there's more discovery that would need to be done? There's definitely more discovery. And look, we did discovery on Reman. We discovered other entities similar to Dentamac that Emeritus has continued discounting claims on. And that, again, is why we asked for injunctive relief. And look, if the PPO Act doesn't apply, like I said, then the injunctive relief would be that you've got to stop selling these products as PPOs. Because if a dental provider is not a provider under the statute, then the product is not valid. Okay. Thank you. We have your arguments. Appreciate your arguments here today and the cases submitted.